IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

RODNEY BROADNAX, et al,

      Plaintiffs,

v.                                    CIVIL ACTION NO. 1:22-cv-00437

UNITED STATES OF AMERICA, et al,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is defendant United States's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> ECF No. 48. For the reasons explained below, the motion is **GRANTED**.

## I.  Background

Plaintiffs allege that at all relevant times they were inmates of Federal Correctional Institution McDowell, in McDowell County, West Virginia. <u>See</u> Second Am. Compl. at ¶ 1, ECF No. 45. They bring this lawsuit against the United States government and fifty "John Doe" prison guards in their individual capacities. <u>See id</u>. at ¶¶ 2-3.

According to plaintiffs' second-amended complaint, from August 8 through 11 of 2021, carbon monoxide leaked from a water heater into their housing units. <u>See id</u>. at ¶ 16. They allege that prison staff responded to duress alarms, observed inmates

exhibiting signs of illness, turned the alarms off, and "briefly" released them into the prison yard.  See id. at ¶¶ 18-21.  Plaintiffs allege that prison staff returned plaintiffs to their housing units before properly ensuring the dangerous conditions were corrected and after providing "cursory" medical evaluations.  See id. at ¶¶ 26, 28.  They allege that their "exposure to extremely high levels of CO continued over the next several days."  See id. at ¶ 27.  They contend that since the incident, prison staff have provided "minimal" medical treatment, and the affected inmates "have never been properly medically evaluated."  See id. at ¶ 29.

Based on these allegations, plaintiffs bring claims of negligence and intentional infliction of emotional distress against the United States.  See id. at ¶¶ 40-60.  They also assert related claims of "medical monitoring," which are claims for future damages arising from these alleged torts.  See id. at ¶¶ 61-67; see also Bower v. Westinghouse Elc. Corop., 522 S.E.2d 424,429-30 (W. Va. 1999) (quoting Ball v. Joy Tech., Inc., 958 F.2d 36, 39 (4th Cir. 1991)).

As to the "John Doe" prison guards sued in their individual capacities, plaintiffs allege, under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), "failure to prevent harm" and "deliberate indifference to their serious medical needs" in violation of the Eighth Amendment to the

United States Constitution.  See Second Am. Compl. at ¶¶ 68-97,
ECF No. 45.  However, these Bivens claims are not at issue in
this motion to dismiss.  See Def's Mot. Dismiss at 1 n.1, ECF
No. 48.

As to plaintiff's negligence and intentional infliction of
emotional distress claims, the United States argues that the
court lacks subject-matter jurisdiction under Rule 12(b)(1) of
the Federal Rules of Civil Procedure, because defendants are
immune from suit under the "discretionary function" exception to
the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.,
or, in the alternative, that plaintiffs fail to state a claim
upon which relief may be granted under Rule 12(b)(6) of the
Federal Rules of Civil Procedure.  See Def.'s Mot. Dismiss at 9-
15, ECF No. 48.

## II.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) asks whether
a court may hear and adjudicate the claims brought before it.
Federal courts are courts of limited jurisdiction and can act
only in those specific instances authorized by Congress.  See
Bowman v. White, 388 F.2d 756, 760 (4th Cir. 1968).  The
plaintiff bears the burden of proving the existence of subject-
matter jurisdiction.  See Evans v. B.F. Perkins Co., 166 F.3d
642, 647 (4th Cir. 1999).  Further, a party who brings an action
against the United States pursuant to the FTCA "bears the burden

of pointing to . . . an unequivocal waiver of immunity."
Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995)
(quoting Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983)).

When challenging subject-matter jurisdiction, defendants
may challenge the truthfulness of the allegations establishing
subject-matter jurisdiction or mount a facial attack to the
complaint's allegations of subject-matter jurisdiction.  See
Evans v. United States, 105 F.4th 606, 615 (4th Cir. 2024).
Under a facial attack, "where the defendant contends that the
allegations in the complaint are insufficient to confer subject-
matter jurisdiction, the district court assesses the motion
under the same standard as one brought under Rule 12(b)(6)."
Id. (citing Kerns v. United States, 585 F.3d 187, 192 (4th Cir.
2009)).

When that is the case, the Rule 12(b)(1) analysis is
identical to a Rule 12(b)(6) analysis in all material respects.
Id.  "In evaluating such a challenge, the district court accepts
all allegations as true and determines whether those allegations
are sufficient to invoke jurisdiction."  Id.  However, before
giving allegations the presumption of truth, the court first
"identif[ies] pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth."
Saunders v. Jividen, No. 2:21-cv-00250, 2024 WL 3307849, at *3

(S.D.W. Va. May 24, 2024) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S.
662, 679 (2009)).

### III. Discussion

In this case, the United States challenges both the factual
predicate of subject-matter jurisdiction and the sufficiency of
the jurisdictional allegations.  <u>See</u> Def.'s Mem. Supp. Mot.
Dismiss, ECF No. 49-1; <u>see also</u> Pls.' Resp. at 10, ECF No. 50
("Defendants can base this challenge on either a failure to
allege sufficient jurisdictional facts or by arguing that the
jurisdictional allegations are not true.  Defendants clearly
argue dismissal under the former and, while not specifically
stated, appear to also argue for dismissal under the latter.").

However, the court only needs to consider the facial
challenge since plaintiffs' second-amended complaint fails on
its face; taking the non-conclusory allegations as true, the
allegations fail to establish jurisdiction.

Plaintiffs base their claims on three acts or omissions of
the United States:  (1) its maintenance and installation of the
water heater, <u>see</u> Second Am. Compl. at ¶ 53, ECF No. 45, (2) its
response to the emergency and decision to return inmates to
their cells, <u>see</u> <u>id</u>. at ¶¶ 18-19, 23, 26, and (3) its medical
care following the incident, <u>see</u> <u>id</u>. at ¶ 29.

The United States argues that plaintiffs cannot challenge
the maintenance and installation of the water heater because

they did not exhaust that claim during their administrative proceedings.  See Def.'s Mem. Supp. at 28, ECF No. 49-1.  As to the other two acts or omissions, the United States argues that "the process of evacuating and medically evaluating the inmates from [the units], as well as the determination to return them to the units, are decisions committed to the discretion of BOP officials, and are the types of decisions the [discretionary function exception] was designed to protect."  Id. at 15.

### A.  Administrative Exhaustion

Plaintiffs did not exhaust their administrative remedies for claims regarding the installation and maintenance of the water heater.  However, they now allege that the United States "breached its duty to [p]laintiffs by failing to abide by the mandatory standards, codes and authorities adopted by the Bureau of Prison's 'Facilities Operations Manual' Program Statement ADM/FAC, Number 4200.12, dated July 18, 2017, concerning the installation, operation and/or maintenance of the hot water heater."  Second Am. Compl. at ¶ 53, ECF No. 45.

The government's possible waiver of immunity under the FTC is "subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed."  Perry v. Coakley, No. 5:15-13345, 2016 WL 11484169, at *3 (S.D.W. Va. July 6, 2016) (citing 28 U.S.C. § 2675(a)).  "As a general matter, filing a timely administrative

6

claim is jurisdictional and cannot be waived." Id. (citing
Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)). "A
tort claim must be presented to the appropriate federal agency
within two years after the claim accrues and the lawsuit must be
commenced within six months after the receipt of a final agency
decision." Id. (citing 28 U.S.C. § 2401(b)).

Plaintiffs do not dispute that in their administrative
proceedings, they did not challenge the installation and
maintenance of the water heater. See Pls.' Resp. at 3, ECF No.
50. Rather, they argue that they can now raise the maintenance
and installation allegation as part of the breach element to
their claims of negligent emergency response and medical
treatment:

> Plaintiffs are not alleging a stand-alone
> negligence claim against Defendants for
> improper installation, inspection or
> maintenance o[f] the hot water tank.
> Instead, Plaintiffs' allegations regarding
> the installation, inspection, and
> maintenance of the hot water tank go to the
> breach element of their negligence claims
> against Defendant.

Id. at 3-4. The court rejects this argument.

Whether the United States breached its duty to install and
maintain the water heater in accordance with the Facilities
Operations Manual has no bearing on whether the United States
breached its duties to respond to the emergency and provide
medical care. That is a separate breach allegation and,

7

therefore, a separate negligence claim.  Because this claim was
not raised in the administrative proceedings, the court lacks
subject-matter jurisdiction over it.

## B. Discretionary Function

The court also lacks subject-matter jurisdiction over
plaintiffs' claims arising from the emergency response and
medical treatment allegations.  Based on plaintiffs'
allegations, those claims fall within the discretionary function
exception to the United States's waiver of sovereign immunity
under the FTCA.

As to the government's emergency response, plaintiffs
allege that "Defendant USA breached its duty to Plaintiffs by
failing to properly protect and safeguard Plaintiffs from the CO
leak."  Second Am. Compl. at ¶ 49, ECF No. 45.  They allege that
prison officials should have shut off the gas supply to the
water heater sooner, evacuated them to a safe environment rather
than initially silencing the duress alarms, and waited longer
before returning them to their cells.  See id. at ¶¶ 27, 50-51.

As to the claims arising from the medical treatment
provided, plaintiffs allege that they "initially received a
cursory medical evaluation and were promptly returned to
confinement[,]" and that "[s]ince their initial exposure,
[p]laintiffs have received minimal medical treatment and have
never been properly medically evaluated."  Id. at ¶¶ 28, 29.

Fundamentally, federal courts do not have jurisdiction over actions against the United States unless Congress has expressly waived the United States's sovereign immunity.  See United States v. Sherwood, 312 U.S. 584, 586 (1941).  The FTCA, however, provides a limited waiver of immunity in actions arising from personal injuries caused by government employees acting within the scope of their employment.  See 28 U.S.C. §§ 1346(b), 2674.  Under these circumstances, "the Government will accept liability in the same manner and to the same extent as a private individual would have under like circumstances."  Strand v. United States, 233 F. Supp. 3d 446, 455 (D. Md. 2017) (citing Wood v. United States, 845 F.3d 123, 132 (4th Cir. 2017)).  Nevertheless, numerous exceptions prohibit complainants from recovering under the FTCA, most prominently the "discretionary function" exception.  See id.

Under the discretionary function exception, the waiver of sovereign immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988) (cleaned up).  The exception "assure[s] protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions."  Dalehite v. United States, 346 U.S. 15, 26-27 (1953).

To determine whether the discretionary function exception applies, courts employ a two-step inquiry.  First, courts consider "whether the conduct at issue involves an element of judgment or choice."  Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015).  Second, courts consider whether the conduct at issue "involve[d] the permissible exercise of policy judgment."  Berkovitz, 486 U.S. at 537.  If the challenged actions or omissions satisfy these two steps, the government's conduct is considered "discretionary within the meaning of the exception," and courts lack jurisdiction "whether or not the discretion involved be abused."  Pornomo v. United States, 814 F.3d 681, 687 (4th Cir. 2016) (quoting 28 U.S.C. § 2680(a)).

"Plaintiffs bear the burden of proving that the discretionary function exemption does not apply."  Indem. Ins.

Co. of N. Am. v. United States, 569 F.3d 175, 180 (4th Cir.
2009).  "If the plaintiff fails to meet this burden, then the
claim must be dismissed."  Welch v. United States, 409 F.3d 646,
651 (4th Cir. 2005).  Additionally, the FTCA is strictly
construed with ambiguities resolved in favor of the United
States.  See United States v. Nordic Vill., Inc., 503 U.S. 30,
30-34 (1992).

The United States argues that plaintiffs fall short on both
prongs of the discretionary function inquiry because (1) the
conduct at issue involves an element of judgment or choice, and
(2) the conduct at issue involves the permissible exercise of
policy judgment.

     **1.   Judgment or Choice Involved**

"Conduct involves an element of judgment or choice unless a
'federal statute, regulation, or policy specifically prescribes
a course of action for an employee to follow.'"  Bulger v.
Hurwitz, 62 F.4th 127, 143 (4th Cir. 2023) (quoting Berkovitz,
486 U.S. at 536).

Plaintiffs argue that judgment or choice was not involved
in the challenged actions because specific courses of action
were prescribed by three sources:  (1) the Eighth Amendment to
the United States Constitution, (2) 18 U.S.C. § 4042(a), and (3)
BOP regulations.  See Pls.' Resp. at 10, ECF No. 50.

### (a)  Eighth Amendment

Plaintiffs argue that the Eighth Amendment subjects the United States to liability under the FTCA because the amendment imposes duties to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'"  See id. at 11 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

The court disagrees; the Eighth Amendment does not impose mandatory duties as to plaintiffs' state-law tort claims.  This is because "[t]he United States has not waived sovereign immunity in suits claiming constitutional torts."  Stritzinger v. Bank of Am., No. 3:15-1469-TLW-PJG, 2015 WL 12865197, at *3 (D.S.C. June 30, 2015) (quoting Reinbold v. Evers, 187 F.3d 348, 355 n.7 (4th Cir. 1999); see also Johnson v. United States, No. TDC-22-1647, 2023 WL 7635083, at *6 (D. Md. Nov. 14, 2023) ("The United States Supreme Court has held that the FTCA's waiver of sovereign immunity does not extend to constitutional tort claims.") (citing Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 475 (1994)).

Although plaintiffs attempt to frame their Eighth Amendment claims as state-law torts, they nonetheless are suing the United States for constitutional violations.  If, as plaintiffs argue, the duties of prison staff are established by the Eighth Amendment, plaintiffs would have to prove a violation of the

12

Eighth Amendment to prove their negligence claims.  This is no different than suing the government directly for Eighth Amendment violations.  To permit plaintiffs' argument would allow them to circumvent the government's sovereign immunity from those claims.

That is not to say the plaintiffs are without redress for the alleged Eighth Amendment violations.  They may assert them as <u>Bivens</u> claims against the individual defendants.  But, when it comes to the FTCA claims, "the Eighth Amendment offers no help to [plaintiffs] in this action because the government has not waived its immunity with regard to constitutional torts." <u>Santos v. United States</u>, No. 05-60237, 2006 WL 1050512, at *3 (5th Cir. Apr. 21, 2006) (per curiam) (citing <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994)).

Additionally, even if this were different than suing the United States for a constitutional violation, "the Eighth Amendment's prohibition against cruel and unusual punishment [does not] define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable."  <u>Garza v. United States</u>, 161 F. App'x 341, 343 (5th Cir. 2005) (citing <u>Montez v. United States</u>, 359 F.3d 392, 396 (6th Cir. 2004)); <u>see also</u> <u>Cohen v. United States</u>, 151 F.3d 1338, 1342-43 (11th Cir. 1998); <u>Calderon v. United States</u>, 123 F.3d 947, 950 (7th Cir. 1997)).

13

It is true in a broad sense that "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001) (quoting United States Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir. 1988)).  However, plaintiffs cannot rely on general directives established by those sources to avoid the discretionary function exception. For example, in Bulger the plaintiff relied on a federal statute to establish non-discretionary duties of prison staff, but the court nonetheless found that because the statute did not "dictate any particular course of action or proscribe certain conduct[,]" the conduct did not fall under the discretionary function exception.  Bulger, 62 F.4th at 143.

Like the federal statute at issue in Bulger, the Eighth Amendment does not dictate a particular course of conduct for prison officials to follow when responding to an emergency or rendering medical care.  Federal officials retain discretion where the "'general, sweeping language' of the text did not remove all relevant decisions from their control." Clendening v. United States, 19 F.4th 421, 434 (4th Cir. 2021) (quoting Baum v. United States, 986 F.2d 716, 721–22 (4th Cir. 1993)).

For this reason, "the discretionary function exception applies 'even if the discretion has been exercised erroneously' and is alleged 'to frustrate the relevant [regulatory] policy.'"

Id. (quoting Holbrook v. United States, 673 F.3d 341, 348 (4th Cir. 2012)). "As the [discretionary function] statute specifies, the exception applies 'whether or not the discretion involved [is] abused.'" Id. (quoting 28 U.S.C. § 2680(a)).

Plaintiffs cannot rely on the Eighth Amendment to avoid the discretionary function exception.

### (b)  18 U.S.C. § 4042(a)

Plaintiffs argue that 18 U.S.C. § 4042(a) imposes non-discretionary duties on the United States when responding to emergencies and rendering medical care. See Pls.' Resp. at 16, ECF No. 50.  The portion of the statute plaintiffs rely upon provides that "[i]n general" the Bureau of Prisons shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise[.]"  18 U.S.C. § 4042(a)(2).

It is well established that this statute does not impose non-discretionary duties or prescribe a specific course of conduct for prison officials to follow.  Although § 4042(a)(2) provides "broad directives," "the BOP retains discretion regarding the implementation of those mandates." Rich, 811 F.3d at 145 (citing Cohen, 151 F.3d at 1342).  Even so, plaintiffs contend that this "is not a universally applicable rule of law" because § 4042 requires prison officials to do "something" and

in this case they allegedly did "nothing."  <u>See</u> Pls.' Resp. at 17, ECF No. 50.

The court disagrees.  There is no reason the well-established precedent should not apply here.  "The statute does not dictate any particular course of action or proscribe certain conduct."  <u>Bulger</u>, 62 F.4th at 143.  Under this general statute, prison officials were required to exercise judgment or choice to fulfill the statute's general directives.  "Given the general language of the statute, prison officials exercise broad discretion in safeguarding and protecting inmates."  <u>Id</u>.

This statute does not render the discretionary function exception inapplicable.

### (c)  BOP Regulations

Finally, in support of plaintiffs' argument that the United States had a non-discretionary course of conduct to follow when responding to the emergency and rendering medical care, they point to the Bureau of Prison's National Fire Protection Policies ("NFPP") Program Statement and Health Services Administration ("HSA") Program Statement.

### (i)  NFPP

Regarding the NFPP Program Statement, plaintiffs rely on three provisions of that policy, which, according to their complaint, provide as follows:  (1) "[a]ll institution staff are required to respond to fires and similar emergencies[,]" (2)

16

[i]nitial response to fires or similar emergencies is limited to:  Moving building occupants away from the immediate fire or emergency area[,]" and (3) "[t]he use of heat producing appliances in inmate housing areas must be authorized by the ESCA.  Authorized appliances must be: . . . [m]aintained and repaired in accordance with manufacturers' recommendations." See Second. Am. Compl. at ¶¶  45-47.

The first two provisions provide general requirements to respond to emergencies and move occupants away from emergencies. Plaintiffs put forth only conclusory allegations that prison staffs' response was inadequate because plaintiffs were "briefly" released into the prison yard.  While plaintiffs allege that they should have responded to the emergency differently, the broad provisions of the NFPP leave the specific course of action to the discretion of responding officials. Plaintiffs identify no other statutes, regulations, or policies prescribing a specific course of conduct.  When that is the case, the first prong of the discretionary function exception is satisfied.  See Bulger, 62 F.4th at 142-43.

The third provision of the NFPP related to the authorization and maintenance of heating devices is irrelevant to plaintiffs' claims regarding prisons staffs' response to the emergency and provision of medical care.  As discussed above,

17

the court lacks subject-matter jurisdiction over claims arising from the maintenance and installation of the water heater.

Plaintiffs also argue in their response that the "maintenance manual" provided by the manufacturer of the water heater instructs that gas should be turned off in the event of an emergency. See Pls.' Resp. at 18. However, plaintiffs do not attach that document or raise that allegation in the second-amended complaint. Therefore, the court will not consider it. Regardless, the manufacturer's maintenance manual is not a "federal statute, regulation, or policy" that would remove the discretion of prison officials.

The NFPP did not impose a mandatory course of conduct for prison staff to follow.

### (ii)    HSA Program Statement

Turning to the HSA Program Statement, plaintiffs second source of BOP policies, they point to a provision that allegedly provides that "[e]ach institution will develop and follow a written plan to provide for 24[-]hour emergency medical, dental, and mental health care. The plan will address the following: On-site emergency first aid and crisis intervention . . . . Emergency evacuation of the inmate from the institution." See Pls.' Resp. at 18, ECF No. 50.

This is a general policy statement requiring prisons to develop and follow a written plan for first aid, crisis

18

intervention, and emergency evacuation.  Plaintiffs do not
allege that prison officials did not develop a written plan for
emergency medical care or that they did not follow that plan.
Plaintiffs merely allege that they received "cursory medical
evaluation[s][,]" "received minimal medical treatment," and
"have never been properly medically evaluated."  Second Am.
Compl. at ¶¶ 28-29.  They do not point to a specific course of
action prison staff were required to follow when evaluating or
treating inmates.  That the HSA Program Statement requires
prisons to develop and follow a plan demonstrates that the
specifics are left to the discretion of prison officials; the
policy does not itself impose a specific course of action.

The HSA Program Statement does not render the discretionary
function exception inapplicable.

Because plaintiffs fail to identify a non-discretionary
course of action for prison staff to follow, the first prong of
the discretionary function is satisfied; the prison's emergency
response and provision of medical care required an element of
judgment or choice.  The court will now turn to the second prong
of the discretionary function analysis:  whether prison staffs'
actions involved the permissible exercise of policy judgment.

### 2.  Exercise of Policy Judgment

When specific actions are not mandated by statute,
regulation, or policy, "we consider generally 'the nature of the

19

actions taken and . . . whether they are susceptible to policy analysis.'" Seaside Farm, Inc. v. United States, 842 F.3d 853, 858 (4th Cir. 2016) (quoting Gaubert, 499 U.S. at 325).  Courts do not consider "whether policy considerations were actually contemplated in making [the] decision." Id. (quoting Smith v. Wash. Metro. Area Transit Auth., 290 F.3d 201, 208 (4th Cir. 2002)).  That is because, "[t]his inquiry focuses 'not on the agent's subjective intent . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" Bulger, 62 F.4th at 143 (quoting United States v. Gaubert, 499 U.S. 315, 325 (1991)).  "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id.  "This is a 'strong presumption.'" Clendening, 19 F.4th at 435 (quoting Gaubert, 499 U.S. at 324).

In this case, plaintiffs have not rebutted the strong presumption that the prison's emergency response and provision of medical care were grounded in policy.

### (a). Emergency Response

As to the prison's emergency response, plaintiffs allege that prison staff should have moved plaintiffs from their cells sooner and waited longer to return them.  However, these

allegations implicate policy decisions that the discretionary function exception was designed to protect.

When prison staff initially responded to the emergency, they had to first identify the cause of the inmates' symptoms and then determine how to safely evacuate the inmates from their housing units.  The movement of large groups of inmates in a medium security prison like FCI McDowell implicates obvious safety concerns and requires actions that are susceptible to policy analysis.

Courts have identified the array of policy considerations that prisons must weigh when moving one inmate within a prison. It follows that these considerations would apply when evacuating two housing units and determining where to move the inmates. "[P]risoner placement . . . [is] part and parcel of the inherently policy laden endeavor of maintaining order and preserving security within our nation's prisons." DeOrio v. United States, No. 0:20-cv-4129-RMG, 2021 WL 3856207, at *3 (D.S.C. Aug. 30, 2021) (cleaned up) (quoting Rich, 811 F.3d at 145).  When weighing the competing policy considerations, "[t]he BOP 'must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also . . . ensuring the safety of the prison staff and the community.'" Pearson v. Stock, No. 1:16-05271,

2017 WL 2312824, at *15 (S.D.W. Va. Apr. 10, 2017) (quoting

Caudle v. United States, 72 F.3d 132 (7th Cir. 1995)).

    Given the multifaceted nature of maintaining order and
security within prisons, "[t]he development and implementation
of safety protocols in federal prisons is unquestionably based
on considerations of public policy." Fata v. United States, No.
2:22-cv-04399-MGL-MGB, 2023 WL 8456142, at *6 (D.S.C. Aug. 15,
2023) *aff'd* No. 23-7310, 2024 WL 1736714, at *1 (4th Cir. Apr.
23, 2024) (quoting Santiago v. United States, No. 7:21-cv-00436,
2022 WL 790805, at *2 (W.D. Va. Mar. 14, 2022)).  As this court
has found, "[d]ecisions by governmental officials as to the day-
to-day security needs of a prison, including . . . tactical
choices made surrounding the movement of inmates within the
institutions are judgment calls and choices based on policy
determinations that seek to accommodate 'safety [goals] and the
reality of finite agency resources.'" Adams v. United States,
668 F. Supp. 3d 468, 477 (S.D.W. Va. Apr. 7, 2023) (quoting
Michell v. United States, 149 F. Supp. 2d 1111, 1114 (D. Ariz.
1999), aff'd, 20 F. App'x 636 (9th Cir. 2001)).

    Where plaintiffs have failed to identify a specific course
of action prison staff were required to follow, the court lacks
the means and authority to second guess their decisions:  "'[The
discretionary function exception] is not about fairness, it is
about power' and 'was intended to prevent judicial second-

guessing of government decisions through the medium of tort litigation.'" Adams, 668 F. Supp. 3d at 477 (quoting Mejia v. United States, No. 13-cv-5676 (AJN), 2015 WL 5138708, at *7 (S.D.N.Y. Sept. 1, 2015)).

The prison's emergency response required the exercise of policy judgment.

### (b). Medical Care

The provision of medical care following the incident also required the exercise of policy judgment.

As an initial matter, plaintiffs' vague allegations that they received "cursory" medical evaluations and "minimal medical treatment" after the incident are far too conclusory to rebut the strong presumption that prison staffs' medical decisions were grounded in policy. Plaintiffs have alleged no facts to support these allegations. "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Clendening, 19 F.4th at 435 (quoting Gaubert, 499 U.S. at 324).

While plaintiffs may not agree with the medical care provided by the United States, "prison administrators are given discretion regarding the provision of medical care for inmates." Clemmons v. United States, 2018 WL 6984946, No. 0:16-1305-DCC-PJG, at *6 (D.S.C. 2018) (citing BOP Program Statement 6031.04

23

(Patient Care) <u>Report and Recommendation adopted by</u> No. 0:16-cv-1305-DCC, 2019 WL 142274, at *1 (D.S.C. Jan. 9, 2019)).  Given that plaintiffs have alleged neither specific facts about the medical care provided, nor a specific course of action prison staff were to follow, it must be presumed that the medical decisions required the exercise of policy judgment.

Because both elements of the discretionary function exception are satisfied, the United States is entitled to sovereign immunity from plaintiffs' claims.

### IV.    Conclusion

For the above reasons, the United States's motion to dismiss (ECF No. 48) is **GRANTED.**  The United States's motion to exceed the page limit for its memorandum in support of the motion (ECF No. 49) is also **GRANTED.**  The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record.

**IT IS SO ORDERED** this 5th day of September, 2024.

ENTER:

David A. Faber
Senior United States District Judge

24